1

```
                                          Pages 1 - 12

                UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

             BEFORE THE HONORABLE EDWARD M. CHEN

ADOBE SYSTEMS, INC.,            )
                                )
              Plaintiffs,       )
                                )
          vs.                   )Case No. C-14-0868 EMC
                                )August 14, 2014
                                )SAN FRANCISCO, CA
TEJAS RESEARCH, LLC,            )2:54 p.m.
                                )
                                )
              Defendant.        )
_____)
```

**TRANSCRIPT OF PROCEEDINGS**

*(HEARING ON DEFENDANT'S MOTION TO DISMISS)*

**APPEARANCES:**

**For Plaintiff:**
          **KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP**
          Two Midtown Plaza, Suite 1500
          1349 West Peachtree Street, N.W.
          Atlanta, GA 30309
          (404)260-6080
     BY:  **JEFFREY JAMES TONEY, ESQ.**
     and  **JONATHAN WALDROP, ESQ.**


**For Defendant:**
          **NI, WANG ASSOCIATES**
          8140 Walnut Hill Lane
          Suite 310
          Dallas, TX 75231
          (972)331-4601
     BY:  **NEAL GOPAL MASSAND**


Reported by:    *MARGARET "MARGO" GURULE, CSR #12976*
                *PRO TEM COURT REPORTER, USDC*

**THURSDAY, AUGUST 14, 2014**                                          **2:54 p.m.**

P R O C E E D I N G S

THE CLERK:  Calling Case C-14-0868, Adobe Systems vs. Tejas Research.

Appearances, Counsel.

MR. MASSAND:  Good afternoon, Your Honor.  Neal Massand for the Defendant, Your Honor.

THE COURT:  Okay.  Thank you.

MR. TONEY:  Your Honor, Jeff Toney, and my colleague, Jonathan Waldrop, on behalf of Adobe.

THE COURT:  All right.  All right.  Thank you, Counsel.

We're on for a motion to dismiss by Tejas for lack of personal jurisdiction, and the question here is whether there is specific personal jurisdiction.  And I think the law is not much in dispute that there are situations when one can purposefully avail itself of the forum, which is one of the tests of specific jurisdiction by engaging in certain activity, for instance, that relates to the validity enforcement of the patent.  But the cases seem to line up in this way, and that is:  Where that enforcement is initiating, for instance, judicial enforcement within the forum state, bringing cases in California to enforce a patent, that's a pretty strong argument for contact, finding

contact and sufficient contact in order to obtain jurisdiction.

But here, the examples that were given were suits against California entities, but not suits brought in California. And I think the cases say that, well, that's not enough. Just because you're suing a California entity, it's where the enforcement took place, not where the residents of the enforcee resides.

Similarly, there are cases that talk about licensing activity that may be sufficient. But the courts tend to look at a couple of things. One: Is it exclusive license agreement or nonexclusive? And if it is exclusive, then you have got a stronger case for contact than when you don't have exclusive. And probably more importantly, does the agreement contemplate some ongoing relationship, continuing obligations between the parties, from which one could infer a -- more than ad hoc presence in the state by the contracting party? And if it's just a mere royalty payment or cross-payment, and not much else contemplated, that's generally not enough.

On the other hand, if there is -- if there is some -- something like a joint venture or a continuing development some other things that are going on, that looks more like maintaining some kind of presence.

So -- and I don't now see that here. But part of the

problem is that -- and I understand the discovery dispute, that Adobe hasn't gotten unredacted copies of the licenses, so it's a little hard to know whether there are continuing obligations or whether, you know, how exclusive is it, and what is the nature of it.

So the quality of the relationship that is embodied in that -- under those licensing agreements, is relevant in this case. And that's why I don't agree that we can simply characterize this as a fishing expedition or something that is only done for harassment. At least on its face, it has relevance under the applicable law.

Now, there may be the need to redact certain things -- I don't know -- certain things that that are supersensitive or a protective order for "Attorney's Eyes Only" or some mechanism that needs to be resolved. But to be fair to Adobe, I think the licensing agreements may have some relevance here. So that's -- so I mean, I'm inclined to grant or at least indicate that I would be inclined to grant the motion to dismiss, but only after the parties have had a fair chance to look at the facts and change my view at this point. Because, so far, there is not enough to find jurisdiction.

MR. MASSAND: Certainly, Your Honor. And we -- the Defendant did attempt, in a way, to provide the relevant portions of the settlement agreements. I think to the

extent that you might feel that they were overly redacted -- you know, I wouldn't necessarily dispute that.  I mean, we would certainly produce the agreements subject to a protective order.

You know, there was -- there is some concern on my -- on the part of my client because plaintiff's counsel does represent all of the other defendants in the Texas cases, that this might have been some way for them to try to get a competitive advantage in those cases.

But we would certainly produce the agreements.  I can represent to you that they are all lump sum payment licenses that have no continuing obligations at all.

THE COURT:  And the amount -- it's not material what the amount is, right?  I mean, I don't think that informs the jurisdictional analysis.

MR. TONEY:  It does not, Your Honor.

THE COURT:  Yeah.  So you can redact -- I don't think there would be any objection to redacting that kind of sensitive information.

MR. MASSAND:  Certainly.

THE COURT:  But certainly all the other terms, though.  If you say, "It's lump sum, see you later," nothing else --

MR. MASSAND:  Um-hum.

THE COURT:  -- if that's true, it's a pretty hard

sell to find jurisdiction here.  But I think you have to provide the information so that they can clarify that.

MR. MASSAND:  Certainly we can provide those agreements.

THE COURT:  Well, why don't we proceed in terms of -- we have an understanding here, and I'll embody that in an order that the licensing agreements be turned over, subject to redaction of, for instance, financial dollar amounts and this kind of thing.  But the basic terms that would inform the jurisdictional analysis should not be redacted, and they can be "Attorney's Eyes Only," and then you can file a supplemental -- you know, I don't know -- two weeks from now or something like that, after you have had a chance to look at -- three weeks from now?

MR. TONEY:  I think two or three weeks would be fine for our purposes, Your Honor.  There are one or two respects in which we would argue the jurisdictional law is a little bit more nuanced than Your Honor just submitted.

THE COURT:  Well, I'll hear that.

MR. TONEY:  Well, I would leave it to Your Honor whether you want to have that academic discussion now or if we should address that in our brief.

THE COURT:  Well, if it changes my whole analysis, I would like to hear it now.

MR. TONEY:  It would not be in terms of changing

your entire analysis.  We largely agree with what Your Honor just said in terms of characterization.  The two respects in which I would argue a further nuance about the state of the law, the first one is that while Your Honor is correct, that if there are ongoing contractual relationships with members of the forum that are exclusive in nature.  Of course, that's a very easy call.

But the case law is:  Are there continuing obligations, whether they're in the form of an exclusive license or other things that have been argued in other cases, like audit rights, a power to revoke, the power to require that the licensee mark and other things that go in the typical -- especially very long license agreements that we're talking about here -- where there are ongoing obligation, courts are much more willing to find that that satisfies the minimum contacts?

THE COURT:  Well, what would be -- do you have some -- what would be your strongest case for the proposition that things that you typically find as boilerplate in a licensing agreement, you know, like reserving the right to audit -- I can't imagine anybody doing a licensing agreement without some kind of audit right or requiring -- I mean, those things seem like they would be almost boilerplate in any licensing agreement.  And yet, it's not truly -- I don't know how often it's truly

contemplated there be an ongoing -- other than monitoring, some kind of ongoing back and forth.

MR. TONEY:  I'm not aware of a case that deals with it on that granular a level Your Honor, especially not in those -- these cases tend to be very fact-specific.  But what I will say is the courts uniformly look to the question of whether there are ongoing obligations.  And actually, Your Honor, in a case in which you have a license that contemplates a simple one-time payment, those rarely have audit requirements or audit rights.  There is nothing to audit.  The money has been paid.

THE COURT:  That's true.

MR. TONEY:  So there are cases like that in which there are ongoing obligations.  The second point I would make is that our requirement today, our burden, is a prima facie burden that there have been connections, contacts between the defendants and these members of the forum.

I would suggest that it really was their burden to disprove our allegations, and I submit that this heavily-redacted document that they have provided simply failed to do that.

Your Honor, could, today, decide, drawing all inferences in Adobe's favor, that the redacted parts held some pretty helpful information, ongoing obligations that would support a finding of personal jurisdiction.  And so,

in that second respect, I would suggest that Your Honor could, on this record, drawing inferences in our favor, find that there is a prima facie showing.  So, in that second respect, I would say.

THE COURT:  All right.

MR. TONEY:  The third thing -- and this goes more to the facts -- is that the activities that we're alleging are relevant here are not merely the fact that they have sued four California companies, although that is certainly true.  It's that they have sued four California companies, each one of those resulting in a license agreement with the California company -- none of which, of course, have been produced in unredacted form.  And in addition, have sued five other companies that are customers of a California company in the form of Adobe.

THE COURT:  But all of those suits, these other suits have been brought outside, in other jurisdictions?

MR. MASSAND:  That's right.

MR. TONEY:  It is.  But it does touch the forum to the extent that five of Adobe's 800 customers of this particular accused product have been sued.  And we anticipate that the other 795 likely will be, as well.  So further extensive contacts with a prominent California company.

So it's those nuances, Your Honor, I wanted to bring to

Your Honor's attention.

THE COURT:  So you're suggesting that there is a pattern.  At some point, if there is more than just ad hoc suits against California companies, that there is a pattern that begins to look like targeting a California resident.  Is that your argument?

MR. TONEY:  It is, Your Honor.  I didn't think their argument today was going to turn in this direction.  There are actually cases that hold that, as a matter of judicial economy and efficiency, it is preferred, as a matter of public policy and judicial policy, that a case against the company that supplied the infringement or the infringing device or infringing instrumentality are preferred to 800 separate suits against customers.  And that would be a case that would need to be brought against Adobe in California.

THE COURT:  Well, would it have to be brought in California?

MR. TONEY:  It would have to be brought against Adobe somewhere where Adobe could be found.

THE COURT:  Right.

MR. TONEY:  Yes.

THE COURT:  And would that have to be California?  I mean, I understand the idea that it should be brought against Adobe but --

MR. TONEY:  Well, we would argue it should be. But that's not, you know, a part of -- a basis for their motion to dismiss, and therefore we have not fully briefed it, but would certainly, when we supplement, we will bring those cases to the Court's attention.

THE COURT:  Mr. Massand, what do you want to say?

MR. MASSAND:  I mean, I'm not exactly sure about -- I think probably I will have a better response to that after we see the briefing.  But I mean, there are cases pending in Texas.  You know, that court is familiar with the issues.  The issues that would be present here are going to be argued there first.

I mean, I think -- you know, this interest that Adobe has or that this forum might have in a case -- you know, that is going to have to be balanced against that.  I'm not exactly sure what else to -- how else to respond?

THE COURT:  All right.  Well, let's do this. Let's exchange the discovery, as I have ordered.  Let's have you file a brief in two weeks.

MR. TONEY:  Very good.

THE COURT:  And give you one week to respond --

MR. MASSAND:  Okay.

THE COURT:  -- if you have something else to say. That puts us -- let's see, it's the 28th is the supplemental brief, and then the 4th of September would be the reply.

And we can hear this matter -- is the 18th available?

THE CLERK:  Let me check, Your Honor.

THE COURT:  Actually we're getting stacked up on the 18th, I think.

THE CLERK:  Yes, it is.

THE COURT:  Okay.

MR. MASSAND:  Now, can we agree that we provide the less redacted agreements, say, Monday.  Would that work for the plaintiff?

THE COURT:  That's fine.

MR. TONEY:  That's fine.

THE COURT:  Okay.  All right.  We will set it for the 18th for a hearing.

MR. TONEY:  Thank you, your Honor.

THE COURT:  Thank you.

THE CLERK:  At 1:30, Your Honor?

THE COURT:  At 1:30.

(*Hearing concluded at 3:10 p.m.*)

13

REPORTER'S CERTIFICATE

*     *     *

I, MARGO GURULE, a Pro Tem Certified Shorthand Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated:   August 22, 2014

_____

MARGARET "MARGO" GURULE
CSR No. 12976