UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, | No. C-14-0868 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| TEJAS RESEARCH, LLC., | **(Docket No. 21)** |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Adobe Systems Incorporated ("Adobe") has filed the instant action seeking a declaration of non-infringement of a patent owned by Defendant Tejas Research, LLC ("Tejas"). Tejas has moved to dismiss this action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Adobe asserts that this Court has personal jurisdiction over Tejas because (1) Tejas has initiated numerous patent enforcement actions against California entities in the Eastern District of Texas, and (2) Tejas has entered into non-exclusive licenses with a handful of California entities. The Court finds this matter suitable for disposition without a hearing and therefore **VACATES** the hearing scheduled for September 18, 2014. Neither Tejas' out-of-state enforcement actions nor its non-exclusive licenses, alone or in combination, establish that Tejas has sufficient minimum contacts with California to support the exercise of personal jurisdiction. Accordingly, Tejas' motion to dismiss for lack of personal jurisdiction is **GRANTED**.

## II.     FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Adobe Systems Incorporated ("Adobe") has filed the instant declaratory judgment action seeking a declaration of non-infringement of United States Patent No. 6,006,231 ("'231 patent"). Compl. ¶ 1. Defendant Tejas Research, LLC ("Tejas") is the owner by assignment of the '231 patent. *Id.* The '231 patent is entitled "File format for an image including multiple versions of an image, and related system and method," and generally relates to the "efficient transmission and downloading of images over a network." *Id.* ¶ 13. One of Adobe's products is Scene7 – an "on-demand rich media software that provides document hosting and interactive publishing services such as online catalogs, targeted email, video, and image management." *Id.* ¶ 2.

Tejas has filed over twenty patent infringement actions based on the '231 patent. *Id.* ¶ 13. "Among the myriad companies ensnared in Tejas' patent dragnet are Adobe customers that use Adobe's Scnee7 product as part of their respective websites . . . ." *Id.* ¶ 16. These actions have been filed in the United States District Court for the Eastern District of Texas. *Id.* ¶ 17. Adobe contends that it is its Scene7 product, used by the patent infringement defendants, that is the basis of Tejas' infringement allegations. *Id.* ¶ 21. Adobe contends that Tejas' actions "have created an apprehension that Adobe will imminently and inevitably be sued for infringement of the '231 patent" and have harmed the Scene7 products and disrupted its relationship with its current and potential customers of the Scene7 product. *Id.* ¶¶ 21-23. Adobe seeks a declaration that its Scene7 product does not infringe the '231 patent.

Tejas has moved to dismiss Adobe's action for lack of personal jurisdiction. Docket No. 21. In its complaint, Adobe asserts that this Court's exercise of personal jurisdiction over Tejas is appropriate because Tejas has purposefully directed conduct at California and California residents. Compl. ¶ 7. Specifically, Adobe contends that Tejas has (1) initiated patent litigation against various California entities including Vivid Entertainment and Playboy Enterprises entities; (2) negotiated with and entered into settlement/licensing agreements with California entities (including Vivid Entertainment and Playboy Enterprises); and (3) "creat[ed] apprehension within Adobe that it will imminently and inevitably be sued for infringement of the '231 patent. *Id.*

By contrast, Guy Fielder – Tejas' creator and sole employee – has declared that Tejas "has no offices outside of the state of Texas and neither I nor Tejas owns any property or paid any taxes in any other state besides Texas." Declaration of Guy L. Fielder ("Fielder Decl.") ¶ 6 (Docket No. 21-1). He further asserts that "Tejas is registered to do business in Texas and in no other state and thus has no registered agent outside of Texas" and Tejas does not "produce or distribute any type of product." *Id.* ¶¶ 2, 3. Finally, regarding its licensing agreements that Adobe cites in its complaint as a basis for personal jurisdiction, Mr. Fielder contends that during the negotiations neither he nor his attorneys "traveled to any state to engage in negotiations and at all times during negotiations I and my attorneys have stayed in Texas and engaged in negotiations over the telephone or via e-mail." *Id.* ¶ 13.

This Court held an initial hearing on Tejas' motion on August 14, 2014. At this hearing, the Court ordered Tejas to provide Adobe with copies of its licensing agreements with California entities. It then ordered the parties to provide supplemental briefing as to the effect of these licensing agreements on the personal jurisdiction inquiry. Docket No. 42.

### III.    DISCUSSION

A.    Legal Standard

The law of the Federal Circuit, rather than the law of the various regional circuits, applies to determine whether the exercise of personal jurisdiction over an out-of-state defendant in patent cases is proper. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) ("The issue of personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and thus governed by Federal Circuit law regarding due process."). However, the Federal Circuit applies the familiar two-step personal jurisdiction analysis applicable in all cases: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). For cases arising in California, this analysis collapses into a single due process inquiry. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)

1 ("[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process.").

Under the due process clause, a state may only exercise personal jurisdiction over an out-of-state defendant where that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Whether a defendant has sufficient "minimum contacts" with the forum state to justify the exercise of jurisdiction depends on whether the plaintiff asks this Court to exercise general, as opposed to specific, jurisdiction over the defendant. General jurisdiction exists where the defendant's contacts with the forum state "are so constant and pervasive as to render it essentially at home," such that personal jurisdiction exists even when the causes of action asserted against it have no relationship to those contacts. *See DaimlerAG v. Bauman*, 134 S. Ct. 746, 751 (2014). Specific jurisdiction, by contrast, is narrower – it is based on activities that "arise out of or relate to the cause of action" and can exist "even if the defendant's contacts are not continuous and systematic." *Id.* Indeed, specific personal jurisdiction can be based on a single act. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

Adobe does not contend that general jurisdiction over Tejas is appropriate. Rather, it contends that the exercise of specific jurisdiction is proper given Tejas' connection with California. In determining whether specific jurisdiction is appropriate, courts apply a three-part analysis: (1) Whether the defendant purposefully directed activities at the forum's residents (by purposefully availing itself of the forum, *see Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009)); (2) whether the claim arises out of (or relates to) those activities; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) . Adobe, as the declaratory judgment plaintiff, has the burden of establishing the first two elements. If it establishes a prima facie case for the exercise of jurisdiction under these two prongs, the burden then shifts to Tejas to demonstrate that the exercise of jurisdiction would not be reasonable or fair. *See, e.g.*, *Electronics for Imaging, Inc. v. Coyle*, 340

F.3d 1344 (Fed. Cir. 2003) ("While the plaintiff bears the burden to establish minimal contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable.").

As to this second factor, the Federal Circuit, in the context of actions seeking declaratory judgment of non-infringement, has commanded that "not all of a patentee's activities in the forum state are sufficient to create a basis for asserting personal jurisdiction." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011). Rather, a declaratory judgment claim "'arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit.'" *Id.* (quoting *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). Accordingly, "only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action." *Square, Inc. v. Morales*, No. C13-01431 SBA, 2013 WL 6199281, at *4 (N.D. Cal. Nov. 27, 2013) (citing *Avocent*, 552 F.3d at 1332). As a result, the Court must "examine the jurisdictional facts for conduct whereby the patentee 'may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent.'" *Autogenomics*, 566 F.3d at 1020.

B. <u>Application</u>

Adobe contends that Tejas has purposefully directed activities relating to the enforcement and validity of the '231 patent at California. First, Adobe relies on the fact that Tejas has pursued infringement actions against a number of California-based companies. Second, Adobe contends that by entering into licensing agreements with various California entities, Tejas has created continuing obligations with those entities, and therefore availed itself of the privilege of conducting business in the state. Docket No. 33, at 10.

The Federal Circuit has found that a patent holder merely *threatening* a forum resident with an infringement action (for example, via a cease and desist letter) is insufficient to support the exercise of personal jurisdiction over the patent holder. *See Autonomy, Inc. v. Adiscov, LLC*, No. C11-0420 SBA, 2011 WL 2175551, at *3 (N.D. Cal. June 3, 2011) ("[T]he act of threatening a party with an infringement lawsuit is, standing alone, insufficient to establish personal jurisdiction."). Instead, the defendant must have engaged in "other activities" that "relate to the enforcement or the defense of the validity of the relevant patents." *Avocent*, 552 F.3d at 1333. In *Avocent*, the court

noted that these "other activities" include "initiating judicial or extra-judicial patent enforcement within the forum." *Id.* at 1334.  Thus, for example, this Court has previously held a declaratory judgment defendant subject to personal jurisdiction in a similar context where the defendant had, in addition to sending California residents cease and desist letters,"engaged in judicial patent enforcement (with respect to the patents at issue or a related patent) in this District multiple times." *ActiveVideo Networks, Inc. v. Trans Video Electronics, Ltd.*, 975 F. Supp. 2d 1083, 1097 (N.D. Cal. 2013).  Other courts have held similarly. *See, e.g.*, *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475 (D.N.J. 2009) ("West has already initiated enforcement activities in the District of New Jersey.  He cannot now, after availing himself of this forum's judicial mechanisms, cry foul when his adversary seeks relief in the same forum . . . .").

However, as the *Avocent* court recognized, it is the defendant's "initiating judicial . . . patent enforcement *within the forum*" that supports personal jurisdiction. *Avocent*, 552 F.3d at 1334.  In rejecting personal jurisdiction in that action, the court stated:

> Aten International and its subsidiary have previously enforced the patents against other parties in the Eastern District of Texas, the Northern District of California, and the International Trade Commission located in Washington D.C.  But Avocent has made no allegation that Aten International has attempted to enforce these patents in any Alabama court.  To the extent the dissent contends that Aten International's enforcement activities in other fora subject it to specific personal jurisdiction in Alabama, we respectfully disagree. We are aware of no precedent that holds that the filing of a suit in a particular state subjects that party to specific personal jurisdiction everywhere else.

*Id.* at 1339.  Any ambiguity regarding the *Avocent*'s holding on this point was subsequently eliminated when, in *Radio Systems Corporation*, the Federal Circuit reiterated that *Avocent* had "made clear . . . that enforcement activities taking place outside the forum state do not give rise to personal jurisdiction." *Radio Sys. Corp.*, 639 F.3d at 792.

It is therefore not surprising that a number of district courts have rejected personal jurisdiction premised solely on prior judicial actions in other states even when brought against a forum resident.  For example, in *Juniper Networks, Inc. v. SSL Services, LLC*, No. C08-5758 SBA, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009), the plaintiff argued that the defendant had "directed its activities toward California by virtue of having 'targeted and sued California-based Citrix Online

1  . . . for patent infringement based on three of the same patents at issue in this case." *Id.* at \*3.  The

2  court rejected this argument, finding that plaintiff "ignor[ed] that SSL's patent enforcement activity

3  took place in Texas, not California." *Id.*  It then held:

> Here, the enforcement activity involving the Citrix entities transpired in Texas, not California. Tellingly, Juniper cites no authority to support its novel argument that the act of filing a lawsuit against an alleged California resident – *in a Texas district court* – is sufficient to make a prima facie showing that it has purposefully availed "itself of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Nor does such an argument make any logical sense.  Under Juniper's theory of personal jurisdiction, a defendant would automatically be subject to personal jurisdiction in a forum where it previously sued an entity that happened to conduct business in that particular state, even where the lawsuit was filed in an entirely different state.

*Id.* at \*4; *see also CommVault Sys., Inc. v. PB & J Software, LLC*, No. C13-1332 MMC, 2013 WL 3242251 (N.D. Cal. June 25, 2013) ("CommVault relies on a patent infringement lawsuit filed by PB & J in the Eastern District of Missouri against EVault, Inc., a corporation with its principal place of business in this district.  CommVault's reliance on said filing is unavailing."); *Key Source Int'l v. CeeColor Indus., LLC*, No. C12-01776 WHA, 2012 WL 6001059, at \*3 (N.D. Cal. Nov. 30, 2012) (holding that "filing suit against a resident of the forum state is insufficient to find personal jurisdiction"); *Autonomy*, 2011 WL 2175551, at \*4 ("[T]he Court finds that the fact that Adiscov sued Autonomy and Recommind *in Virginia* does not show enforcement activity within this forum.").

Accordingly, the fact that Tejas has pursued enforcement actions against California residents in the Eastern District of Texas does not support the exercise of personal jurisdiction of Tejas in California.  *See ActiveVideo*, 975 F. Supp. 2d at 1083 (noting that Judge Chesney's decision in *CommVault* – cited above – "made note that a suit against a forum resident (California) in a different forum (Texas) should not be part of the calculus in determining whether there is personal jurisdiction within the forum (California) in that suit").

However, Adobe does not rely solely on Tejas' patent infringement actions brought against California residents in Texas.  Rather, Adobe also points to the fact that these enforcement actions resulted in Tejas entering into licensing agreements with the California entities sued in those actions.

1    The Court concludes nonetheless that Adobe has failed to meet its burden of demonstrating that
2    these licensing agreements are of a kind that would support personal jurisdiction over Tejas.
3         While patent licensing agreements with forum residents can form the basis of personal
4    jurisdiction, not all licensing agreements are sufficient to establish the required "minimum contacts."
5    Rather, the "Federal Circuit has repeatedly held that an exclusive licensing agreement – where the
6    licensee is located in the forum state and the licensing agreement contemplates 'continuing
7    obligations' between the parties to the agreement – supports a finding of personal jurisdiction over
8    the licensor." *Google, Inc. v. Eolas Techs. Inc.*, No. C13-05997-JST, 2014 WL 2916621, at *2
9    (N.D. Cal. June 24, 2014); *see also Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194 (Fed. Cir.
10   2003) ("Exclusive license agreements with respect to the patents at issue with residents of the forum,
11   for example, have, at least in some circumstances, been held sufficient to confer personal
12   jurisdiction."). Thus, in *Breckenridge*, the Federal Circuit stated:

> Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

18   *Breckenridge*, 444 F.3d at 1366.
19        In arguing that its licensing agreements with California residents are insufficient to establish
20   personal jurisdiction, Tejas relies largely on the Federal Circuit's decision in *Red Wing Shoe Co.,*
21   *Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). In that case, the plaintiff
22   argued that the patent holder had sufficient minimum contacts with Minnesota because it had
23   entered into "thirty-four licensees who sell products in Minnesota," with six of those licensees
24   having stores or being registered to do business in Minnesota. *Id.* at 1359. While noting that the
25   patent-owner's contacts with Minnesota were "extensive," it nonetheless found that "doing business
26   with a company that does business in Minnesota is not the same as doing business in Minnesota."
27   *Id.* at 1361. To hold otherwise, according to the court, would be to subject a defendant to
28   nationwide personal jurisdiction whenever it simply did business with a company that itself did

8

business nationwide. *Id.* Accordingly, the court concluded that the patent-owner's "extensive" contacts with Minnesota were not sufficient for purposes of the personal jurisdiction inquiry in the patent context. *Id.* at 1361-62.

The Court finds that *Red Wing Shoe* is not directly on point. In *Winstron Corp. v. Phillip M. Adams & Assoc., LLC*, No. C10-4458 EMC, 2011 WL 1654466 (N.D. Cal. Apr. 28, 2011), this Court distinguished *Red Wing Shoe* by noting that the licensees in that case did not "reside[] in the forum state; they merely conducted business there." *Id.* at *8. By contrast, the licensee in *Winstron* did not "merely conduct business in California; it [was] headquartered in California." *Id.* Accordingly, the connection with the forum state created by the licensee did not depend on the unilateral decision of a non-resident licensee to direct business into the forum state. Instead, it was more direct insofar as the patent-owner affirmatively entered into the license agreement with a California resident. As in *Winstron*, Tejas entered directly entered into licenses with entities that not only do business in California, but are headquartered in California.

However, the fact that Tejas affirmatively entered into licensing agreements with California residents does not end the inquiry. As referenced above, the Federal Circuit requires courts to closely examine the *nature* of the license agreements. In this way, Adobe's reliance on Tejas' license agreements with California residents is problematic for two reasons. First, it is clear – simply by the existence of multiple licenses between Tejas and others – that the license agreements are not exclusive in nature. A number of courts have drawn a distinction between exclusive license agreements and non-exclusive license agreements. *See, e.g.*, *Breckenridge*, 444 F.3d at 1366 (noting no personal jurisdiction where the "defendant has successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensee's sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income"); *Engineering & Inspection Servs., LLC v. IntPar, LLC*, No. 13-0801, 2013 WL 5589737 (E.D. La. Oct. 10, 2013) ("Further, the letters that Defendant sent to Plaintiff contemplated entering into a non-exclusive license, which would not provide grounds for conferring jurisdiction, assuming other businesses similarly situated to Plaintiff agreed to comply."); *Nanoexa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010 WL 4236855 (N.D. Cal. Oct. 21, 2010) ("As

acknowledged by Plaintiff . . . the License Agreement is non-exclusive and thus would not favor a finding that Defendant Argonne purposefully availed itself of the privileges of conducting business in California even under Federal Circuit law."); *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, No. SACV 07-846-MRP (ANx), 2008 WL 7071464 (C.D. Cal. Jan. 17, 2008), *aff'd* 566 F.3d 1012 (Fed. Cir. 2009) ("Extensive authority supports the proposition that other *licensing* activities with in-state entities, even if substantial, are generally insufficient for specific jurisdiction unless they create exclusive relationships between the patentee and residents of the forum.").

Second, the non-exclusive licenses between Tejas and California entities in this case do not create continuing obligations of the type sufficient to establish personal jurisdiction in California. The type of "continuing obligations" which count for the personal jurisdiction analysis "include activities related to the litigation or enforcement of the patent, and sales or marketing activities over which the defendant has control." *Eolas Techs.*, 2014 WL 2916621, at *3; *see also Breckenridge*, 444 F.3d at 1366 ("[O]ur case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities."). Thus, in *Eolas Technologies*, the court found the necessary "continuing obligations" where the licensee was required to market and sell the patent; provide recordkeeping, bookkeeping, accounting and reporting to the patent holder of all patent-related activities; and the license provided for joint prosecution and defense of patent-related actions. *Eolas Techs.*, 2014 WL 2916621, at *3. Similarly, in *Breckenridge*, the Federal Circuit found that an exclusive license agreement with a forum resident was sufficient to establish personal jurisdiction where: (1) the licensee was given the right to sue for patent infringement; (2) required the parties to cooperate regarding infringement actions; (3) gave the licensee "full control of the prosecution or maintenance" of any patent the patent owner abandoned; and (4) provided that the patent owner would consult with the licensee in the "science, medicine and marketing of vitamins and related products." *Breckenridge*, 444 F.3d at 1367.

Here, Adobe contends that the following general provisions contained in the various non-exclusive licensing agreements are "continuing obligations," *Eolas Techs.*, 2014 WL 2916621 at *2,

10

between Tejas and its California licensees: (1) The "continuing obligation" to keep the licensing agreements confidential; (2) Tejas' covenant not to sue the licensees or their affiliates; (3) Tejas' obligation to maintain the rights of the licensee under the license agreement if it transfers its rights to the patents; (4) Tejas' obligation to obtain written agreement of any assignee to be bound by the covenants of the agreements; (5) the licensee's obligation to transfer all covenants and promises under the license agreement if the licensee transfers its rights under the license agreement. None of these boilerplate duties relate to " litigation or enforcement of the patent, and sales or marketing activities over which the defendant has control." *Eolas Techs.*, 2014 WL 2916621, at *3; *see also IntPar*, 2013 WL 5589737, at *4 ("The Federal Circuit has also found jurisdictional grounds insufficient when a foreign defendant had successfully licensed the patent in the forum state, even to multiple non-exclusive licensees, but did not control the dealings of those licensees in the forum, and rather only collected royalty income."). Further, none of the duties' identified by Adobe require Tejas to take any affirmative action in California absent any assignment or transfer of its rights. *See Seaflex, Inc. v. Fall Protection Sys., Inc.*, No. 4-07-cv-1681, 2007 WL 7239322, *1, 5 (S.D. Tex. Nov. 20, 2007) (finding insufficient contacts where a licensing agreement did "not explicitly require any act to be done in the State of Texas" and did not grant the patent hold the "right to exercise any control over [licensee's] business activities"). Licensees are given no enforcement rights over the patent, and Tejas exercises no control over licensee's business activities except by imposing very narrow obligations under certain conditions. As a result, the Court concludes that Tejas' non-exclusive licenses do not create "continuing obligations" between Tejas and California. Adobe cites no persuasive authority finding specific jurisdiction over a patent declaratory relief action under similar circumstances.

Tejas' enforcement actions against California entities in other states and its non-exclusive licensing agreements with a handful of California entities does not establish sufficient contacts for the exercise of personal jurisdiction in this matter. Because of this finding, the Court need not address Adobe's arguments that the exercise of personal jurisdiction in this action would comport with the concepts of fair play and substantial justice. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999).

## IV. CONCLUSION

For the reasons stated above, Tejas' motion to dismiss for lack of personal jurisdiction is **GRANTED**. Adobe's action is **DISMISSED** without prejudice. The Clerk is instructed to enter judgment and close the file.

This order disposes of Docket No. 21.

IT IS SO ORDERED.

Dated: September 17, 2014

_____
EDWARD M. CHEN
United States District Judge.

12